ALBERT J. SCHNEIDER, as Administrator, etc., of ALBERT Z. SCHNEIDER, Deceased, Respondent, *v.* RAILWAY EXPRESS AGENCY, INC., and Another, Appellants.

Fourth Department, October 10, 1930.

*Locke, Babcock, Hollister & Brown [Evan Hollister* of counsel], for the appellants.

*Anthony & Maisel [Dana L. Spring* of counsel], for the respondent.

PER CURIAM. Plaintiff's intestate met his death in a collision on July 18, 1929, between a truck owned by the defendant Railway Express Agency, Inc., and operated by the defendant Waldraff and a bicycle on which plaintiff's intestate was riding. The truck was a large covered vehicle with solid sides. Plaintiff's intestate and the truck were proceeding in the same direction on the street. Plaintiff's intestate had come from a position behind the right side of the truck and had overtaken it and was beside the truck on its right side when the driver of the truck turned to the right into an intersecting street. The truck was equipped with a device of a movable signal arm to the left of the driver.

The complaint alleges negligence on the part of the defendants in general terms in the management and operation and control of

the truck. The plaintiff introduced proof that before making the turn the driver of the truck did not cause the arm of the signaling device to be extended. There is also proof that the signaling device could not be seen from the rear of the right-hand side of the truck at any point within seventy feet of the rear of the truck.

The case is devoid of evidence that the plaintiff's intestate was in a position where he could have seen the signal had the arm been operated. In fact, the undisputed evidence is to the contrary. Under these circumstances the failure to operate the signaling device, even though deemed violative of a statute (Vehicle and Traffic Law, § 83, subd. 1), ▌ did not contribute to the accident.

The defendants' counsel asked the court to charge " that by reason of the fact that the boy was overtaking and riding alongside of the truck on the right side, and in placing himself in a position from which he could not have seen the signal arm had it been extended from the left front side of the truck, that the driver's omission to extend it, if so found to be the fact, when slowing down and making the right turn, was not a contributing cause of the accident for which the defendant can be held liable." And this the court declined to charge.

The conditions assumed in this question are established by undisputed evidence. It was, therefore, error, for the reasons already indicated, to decline the defendants' counsel's request. And, in view of the closeness of the case, we think it reversible error.

All concur, except THOMPSON and CROSBY, JJ., who dissent and vote for affirmance in a memorandum by THOMPSON, J. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

THOMPSON, J. (dissenting). We think the court properly refused to charge the request and we do not agree that the case is " devoid of evidence that the plaintiff's intestate was in a position where he could have seen the signal had the arm been operated." The request followed a colloquy between the court, counsel and a juror during which the juror asked the following question: " Was there any evidence brought out whether the boy was where the driver could see at the left at any particular time after he left Porter Avenue, and when did he disappear to the right? " At this point defendants' counsel interjected: " Mr. Austin said he was at all times behind," to which the court added: " He was behind the car at all times, as I understood." Neither of these statements were challenged by plaintiff's counsel, and there is ample evidence to sustain them.

The boy did not ride in a straight line but from side to side on the right-hand part of the street. He at no time went beyond the truck, and on one occasion he tried to get on the back end of it. Some time and space before the truck reached the intersection it slowed down. The exact whereabouts of the boy at and after that time and the point in the street where the truck began to go slower is uncertain. *Before* this slowing down it became the duty of the driver to " give warning," either by holding his arm out horizontally and at right angles to the vehicle, or by operating an adequate mechanical signal device. (Vehicle & Traffic Law, § 83, subds. 1, 2.)

When and where did the truck begin to slow down? When and where should the signal have been given? Where was the boy at and after that time? Was he at any time in a position to see and would he have seen the signal if it had been so given? These and other pertinent questions would thus have been taken from the case had the request been charged.

Whether or not the boy was " overtaking and [or] riding alongside of the truck on the right side, and * * * placing himself in a position from which he could not have seen the signal arm had it been extended from the left front side of the truck" covered many issues of fact which were for the jury to determine and not the court.

The whole request was predicated upon the assumption that the boy was " overtaking " the truck. The testimony of the two Austins is to the effect that the truck and the boy were running along about abreast. The request, if granted, would have been harmful in saying to the jury that the boy was disobeying the law of the road in passing another vehicle on its right side, and was, therefore, guilty of contributory negligence, when the evidence does not warrant that conclusion.

For these reasons we think there was no error in the court's declining to charge as requested and that the judgment should be affirmed.

CROSBY, J., concurs.

Judgment and order reversed on the law and a new trial granted, with costs to the appellants to abide the event.